**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

KYLE RHODES, individually and as                                    PLAINTIFF
plaintiff class representative; WESLEY
ATWOOD, individually and as plaintiff
class representative; and SAMANTHA
HUDON, individually and as plaintiff
class representative

v.                                    No. 4:15CV000312 JLH

KROGER CO.; ANDREA TYSON;
and PATRICK SCHERREY                                    DEFENDANTS

**<u>OPINION AND ORDER</u>**

Kyle Rhodes, Wesley Atwood, and Samantha Hudon brought this putative class action on

behalf of customers of 32 Arkansas Kroger stores in the Circuit Court of Pulaski County, Arkansas,

against Kroger Co. and two of its Arkansas district managers, Andrea Tyson and Patrick Scherrey.

Kroger offers discounts to customers who apply for and use a Kroger Plus Card.  These discounts

are not available to customers who do not have a Kroger Plus Card.  Further, one day a week Kroger

offers Kroger Card customers over age 55 an additional discount of five percent.  The plaintiffs

contend that Kroger's actions violate Ark. Code Ann. § 4-75-501(a)(2),[1] which makes it unlawful

for any person or corporation willfully to fail to grant any purchaser of a manufactured product a

discount that is granted to other purchasers of like quantities.  As a remedy, the plaintiffs seek

between $200 and $1,000 for each purchase, which represents the civil penalty provided in Ark.

Code Ann. § 4-75-501(b)(1).

---

[1] In several places the complaint references "Act 183."  Act 183 of 1903 is codified as Ark.
Code Ann. § 4-75-501.

The complaint alleges that Tyson and Scherrey are district managers of approximately 14 and 18 Arkansas Kroger stores, respectively, and that they were responsible for the discount programs and compliance with Arkansas law.

The defendants removed the action, arguing that the Class Action Fairness Act, 28 U.S.C. § 1332(d), confers jurisdiction upon this Court to hear the case. In the alternative, the defendants contend that the district managers are fraudulently joined, so this Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1). The plaintiffs have filed a motion to remand to the state court based on the local controversy exception; and they deny that the district managers are fraudulently joined. For the reasons set forth below, the motion to remand is granted.

## I.

Congress enacted CAFA in 2005 so that federal courts could preside over interstate cases of national importance. *Westerfield v. Indep. Processing, LLC,* 621 F.3d 819, 822 (8th Cir. 2010). CAFA grants federal jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 in the aggregate, any class member and any defendant are citizens of different states, and there are at least 100 class members. 28 U.S.C. § 1332(d)(2). The burden is on the removing party to establish that these requirements are met. *Westerfield,* 621 F.3d at 823.

Kroger is an Ohio corporation. *See* Document #1 at 4. The named plaintiffs are citizens of Arkansas. Document #2 at 2-3. Therefore, CAFA's minimum diversity requirement is met. 28 U.S.C. § 1332(d)(2)(A). The remaining requirements also are met, as the plaintiffs concede. Document #10 at 2.

Once the party seeking removal establishes the requirements for CAFA jurisdiction, the burden shifts to the party seeking remand to establish an exception. *Westerfield*, 621 F.3d at 822-23.

Here, the plaintiffs allege that the local controversy exception applies.  The relevant portion of

CAFA provides:

> A district court shall decline to exercise jurisdiction under paragraph (2)--
>
>> (A)(i) over a class action in which–
>>
>>> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>>>
>>> (II) at least 1 defendant is a defendant--
>>>> (aa) from whom significant relief is sought by members of the plaintiff class;
>>>> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>>>> (cc) who is a citizen of the State in which the action was originally filed; and
>>>
>>> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>>>
>>> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or
>>
>> (B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

28 U.S.C. § 1332(d)(4).  This "is a narrow exception that was carefully drafted to ensure that it does

not become a jurisdictional loophole."  SEN. REP. NO. 109-14 at 39 (2005).  Doubt as to whether the

exception applies is resolved against the party seeking remand.  *Westerfield*, 621 F.3d at 823.

It is undisputed that all of the injuries occurred in Arkansas and that no other class asserting

the same or similar facts has been filed in the past three years.  *See* Document #1 at 9-10; Document

#9 at 1.  The issues therefore concern whether the requirements of section 1332(d)(4)(A)(I) and (II)(aa) and (bb) are met.

The first issue is whether more than two-thirds of the members of the proposed class are citizens of Arkansas.  The Eighth Circuit has held that plaintiffs can prove this requirement by affidavit or statistically significant surveys or by redefining the class as only local citizens.  *Hood v. Glister-Mary Lee Corp.*, 785 F.3d 263, 266 (8th Cir. 2015).  The proposed class here is limited to customers of 32 Arkansas Kroger stores.  The plaintiffs have submitted the affidavits of two marketing experts who state that in light of the nature of the items sold at Kroger and the location of the stores, the percentage of the shoppers who are Arkansas citizens far exceeds two-thirds.  Document #9-1 & 2.  The defendants argue that the affidavits are inadequate because they do not address the issue of what percent of shoppers had no Kroger Card, but the complaint defines the class to include all persons age 18 or older who were customers of the 32 Kroger stores during the three years preceding the filing of the complaint.[2]  Document #2 at 16 ¶ 93.  Even if the class is limited to customers who were denied a discount, the class would include all customers age 55 and under inasmuch as customers above that age have been allowed a discount not available to younger customers, and there is no doubt that more than two-thirds of these potential class members are citizens of Arkansas.

In addition, to invoke the local controversy exception, the plaintiff must name a local defendant "from whom significant relief is sought" and "whose alleged conduct forms a significant

---

[2] The plaintiffs do not explain how the class can include all customers of the 32 Kroger stores.  Presumably, that class definition is based on the allegation in the complaint that the Kroger Card policies "coerce customers to give defendants their personal information so that Kroger [can] track personal purchases and build a valuable database and marketing tool."  Document #2 at 6 ¶ 21.  No claim for relief is alleged, however, for this alleged economic coercion.

4

basis for the claims asserted by the proposed plaintiff class." 28 U.S.C. § 1332(d)(4)(A)(II)(aa) and (bb).

"CAFA itself does not describe the type or character of conduct that would form a 'significant basis' of plaintiffs' claims or define the term 'significant relief.'" *Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1265 (10th Cir. 2014). And unlike the two-thirds citizenship requirement, the Eighth Circuit has not defined the scope of the significant defendant requirement. *See Hood*, 785 F.3d at 266. In *Westerfield*, however, it adopted the Third Circuit's interpretation that "[w]hether the [in-state] defendant's alleged conduct is significant cannot be decided without comparing it to the alleged conduct of all the Defendants . . ." *Westerfield*, 621 F.3d at 825 (quoting *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 157 (3rd Cir. 2009)).

The Tenth Circuit, following general principals of statutory interpretation, looked to Congress' purpose in enacting CAFA to discern the meanings of "significant basis" and "significant relief." *Woods*, 771 F.3d at 1265. The court interpreted the terms strictly "so that plaintiffs and their attorneys may not defeat CAFA jurisdiction by routinely naming at least one state citizen as a defendant, irrespective of whether that defendant is actually a primary focus of the litigation." *Id*. Such an interpretation comports with Congress' intention that the local controversy exception be "narrow" and with the Eighth Circuit's holding that doubts must be resolved against the party seeking remand. *See Westerfield*, 621 F.3d at 823; SEN. REP. NO. 109-14, at 39 (2005).[3]

---

[3] The Senate Judiciary Committee report on the significant defendant requirement, cited by the defendants and by the Tenth Circuit, provides an example applicable in this case. *Woods*, 771 F.3d at 1266; Document #18 at 6 (citing SEN. REP. No. 109-14, at 39 (2005)). In that example, the plaintiffs alleged that a foreign insurance company misrepresented its policies but named a local agent of the company as a defendant, claiming application of the local controversy exception. But according to the report, this local agent would only have contact with some of the class members and would not be a person from whom significant relief was sought by the entire class. Rather, the

The complaint alleges:

41.     The [district managers] are and were in charge of and responsible for their Stores' discounting, rebating and compliance with Arkansas law . . . .

* * *

43.     The [district managers] are and were in charge of and responsible for directly and indirectly controlling their Stores' practices and procedures affecting sales, pricing, discounting, and rebating of manufactured products at the Arkansas Kroger Stores they managed and which are the subject of this Complaint.

44.     . . . the [district managers] were officers, directors, employees, or other persons who were employed to act on behalf of Kroger.

45.     With respect to the factual and other allegations of this complaint, the [district managers] were agents or officers of Kroger who had duties of such responsibility that the [district managers] conduct reasonably may be assumed to represent the policy of Kroger.

46.     . . . The [district managers] were engaged in the sale of manufactured products individually and as agents of Kroger . . . .

* * *

49.     The [district managers] performed or caused to be performed all of their Stores' violations of Act 183 which are the subject of this Complaint.

50.     The [district managers] willfully refused or failed to allow or caused the willful refusal or failure to allow Plaintiffs all rebates and discounts which they and their stores granted to other purchasers, for cash, of like quantities of . . . manufactured products.

Document #2 at 9-10. With the notice of removal the defendants filed affidavits from Tyson and

Scherrey stating:

3.     Decisions about the discounted prices associated with the use of the Kroger Card loyalty program are made by Kroger's corporate office.

4.     I have no discretion in overriding pricing from Kroger's corporate office with respect to the prices associated with the Kroger Card loyalty program.

---

insurance company would be from whom significant relief was sought. And because the local agent would have been an "isolated role player in the alleged scheme implemented by the insurance company," the agent's alleged conduct would not be a significant basis for the claims asserted.

5.      I have no decision-making power with respect to pricing discounts pursuant to the Kroger Card loyalty program.

6.      The stores for which I act as district manager must use the discounted prices associated with the use of the Kroger card loyalty program which are mandated by Kroger's corporate office.

7.      I have no discretion in overriding pricing from Kroger's corporate office with respect to the prices associated with the senior discount which is associated with the Kroger Card loyalty program.

8.      I have no decision-making power with respect to the amount of discounting offered to seniors which is associated with the Kroger Card loyalty program.

Document #1 at 208-11.  These affidavits directly contradict the allegations in the complaint.  The complaint alleges that the district managers control prices and discounts in the stores under their management; the affidavits say that the discounted prices are set by the corporate office and that the district managers have no discretion over them.  According to the complaint, the alleged conduct of the district managers would form a significant basis for the plaintiffs' claims because the district managers made the pricing decisions about which the plaintiffs complain.  *See* Ark. Code Ann. § 4-75-501(a)(2) (making it "unlawful for any person . . . to . . . [w]illfully . . . fail to allow to any person . . . discounts granted by them to other purchasers . . . ."  But, according to the affidavits, decisions about discounted prices were made by Kroger's corporate office and the district managers had no discretion to override them.  If that is true, the conduct of the district managers would not be a significant basis for the plaintiffs' claims; indeed, it would be difficult to see how the district managers could have any liability under Ark. Code Ann. § 4-75-501(a)(2) if they had no authority over the discounts because they could not have willfully refused to allow the plaintiffs the discounts granted to other customers.

The plaintiffs argue that the Court must restrict its analysis to the complaint in deciding whether "significant relief is sought" from the district managers and whether the "alleged conduct" of the district managers forms a "significant basis" for the plaintiffs' claims.  Document #10 at 11-15.  The Eighth Circuit has not decided whether evidence outside the complaint may be considered.  Some courts have considered evidence extrinsic to the complaint without expressly addressing the issue of whether it was proper to do so.  *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1167 (11th Cir. 2006); *Summerhill v. Terminix, Inc*., No. 4:08CV00659 GTE, 2008 WL 4809448 at *3 (E.D. Ark. Oct. 30, 2008); *Green v. SuperShuttle Int'l, Inc.*, No. 09-2129 ADM/JJG, 2010 WL 419964, at *3 (D. Minn. Jan. 29, 2010); *Casey v. Int'l Paper Co.*, No. 3:07CV421/RV/MD, 2008 WL 8854569, at *6 (N.D. Fla. Jan. 7, 2008).  But the Ninth and Tenth Circuits have held that districts courts may not look beyond the allegations in the complaint in making these determinations.  *Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010, 1015-17 (9th Cir. 2011); *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1244-45 (10th Cir. 2009).

In *Coffey*, the defendants contended that the local defendant had no assets to satisfy a judgment, so it could not be considered a defendant from whom "significant relief" was sought. *Coffey*, 581 F.3d at 1244.  The Tenth Circuit rejected that argument:

> The statutory language is unambiguous, and a "defendant from whom significant relief is sought" does not mean a "defendant from whom significant relief may be obtained."  There is nothing in the language of the statute that indicates Congress intended district courts to wade into the factual swamp of assessing the financial viability of a defendant as part of this preliminary consideration[.]

*Id*. at 1245.

*Coleman* presented the same issue as *Coffey* but also an additional issue.  In *Coleman*, the plaintiffs were employees of a California entity, Estes West, which was wholly owned by a Virginia

entity, Estes Express.  The plaintiffs commenced an action in a California state court alleging that Estes West and Estes Express violated California's wage and hour laws.  The defendants removed the action to federal court under CAFA, and the plaintiffs moved to remand to state court based on the local controversy exception.  The defendants opposed remand arguing, first, that Estes West had insufficient funds to satisfy a judgment and therefore was not a defendant from whom significant relief was sought, and, second, that Estes Express had almost complete control over the operations of Estes West so that Estes West's alleged conduct did not form a significant basis for the claims asserted by the proposed class.  *Coleman*, 631 F.3d at 1012-14.

Here, the defendants have submitted affidavits that directly contradict plaintiffs' allegations regarding the conduct of the local defendants.  These affidavits, if true, establish that the conduct of the local defendants is not a significant basis for the claims alleged in the complaint.  Neither in *Coffey* nor in *Coleman* did the defendants contradict the allegations in the complaint.  The analysis in both of those cases assumed that the allegations in the complaint were true; the arguments went to the issue of whether the Court could consider facts regarding the local defendants that actually were unrelated to whether significant relief was sought from them or their conduct formed a significant basis for the plaintiffs' claims.  In *Coffey* and in *Coleman* the defendants argued that the local defendants lacked the resources to pay a judgment.  That fact, even if true, was irrelevant to the question of whether significant relief was sought from them.  In *Coleman*, Estes West was the entity that employed the plaintiffs and it was the entity that allegedly violated California's wage and hour laws, so, even if it was following orders from Estes Express, its conduct was still a significant basis for the plaintiffs' claims.  *Id*. at 1020.  It is not apparent in either case that the court needed to reach the issue of whether to consider evidence outside the complaint to rule on the issues.

The rationale in *Coleman*, however, was not that Estes Express' control of the operations of Estes East was irrelevant.  Instead, the decision in *Coleman* was based largely on the conclusion that, as a matter of statutory interpretation, a district court may not look outside the complaint to determine whether the alleged conduct of the local defendant forms a significant basis for the plaintiffs' claims or whether the proposed class seeks significant relief from the local defendant. The court explained:

> We begin with the words of the statute. *United States v. Nader*, 542 F.3d 713, 717 (9th Cir. 2008). "When the words of a statute are unambiguous . . . this first canon is also the last: judicial inquiry is complete." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992) (internal quotation marks omitted). We hold that CAFA's language unambiguously directs the district court to look only to the complaint in deciding whether the criteria set forth in § 1332(d)(4)(A)(i)(II)(aa) and (bb) are satisfied.
>
> The first criterion is whether "significant relief is *sought* " from a defendant who is a citizen of the state in which the suit is filed. 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa) (emphasis added). The word "sought" focuses attention on the plaintiff's claim for relief—that is, on what is "sought" in the complaint—rather than on what may or may not be proved by evidence. The second criterion is whether the defendant's " alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class." *Id*. § 1332(d)(4)(A)(i)(II)(bb) (emphasis added). Like the word "sought," the word "alleged" makes clear that the second criterion is based on what is alleged in the complaint rather than on what may or may not be proved by evidence.
>
> There is a revealing contrast between the language in subsections (aa) and (bb) and the language in subsection (cc). All three subsections specify criteria that must be satisfied before the local controversy exception to CAFA jurisdiction applies. Subsection (cc) requires that the defendant from whom relief is sought and whose alleged conduct is at issue be a defendant "who *is* a citizen of the State in which the action was originally filed." *Id*. § 1332(d)(4)(A)(i)(II)(cc) (emphasis added). Unlike the words "sought" and "alleged," used in subsections (aa) and (bb), the word "is," used in subsection (cc), indicates that an actual fact must be established.

*Id*. at 1015.  The court also explained:

[F]actual determinations under subsections (aa) and (bb) are likely to be more expensive and time-consuming than factual determinations of citizenship and amount-in-controversy. Congress was particularly concerned that subject matter jurisdiction determinations be made quickly under CAFA. A party must seek permission from the court of appeals to bring an appeal from a district court's remand decision under CAFA, and such permission is granted sparingly. *Coleman [v. Estes Express]*, 627 F.3d [1096] at 1100 [(9th Cir. 2010)]; *Coll. of Dental Surgeons of P.R. v. Conn. Gen. Life Ins. Co.*, 585 F.3d 33, 37-39 (1st Cir. 2009). Then, if permission is granted, the court of appeals is required to render its decision in sixty days. *See* 28 U.S.C. § 1453(c)(2).

\* \* \*

A factual determination whether the "alleged conduct" of the local defendant "forms a significant basis for the claims asserted" by plaintiffs under subsection (bb) is particularly likely to be expensive and time-consuming. Such a determination necessarily implicates the merits of the case. We see nothing in CAFA that indicates a congressional intention to turn a jurisdictional determination concerning the local defendant's "alleged conduct" into a mini-trial on the merits of the plaintiff's claims.

*Id.* at 1016.

It would not be true, as the Ninth Circuit seems to assume, that looking beyond the complaint to determine whether the conduct of a local defendant forms a significant basis for the plaintiffs' claims necessarily would turn into a mini-trial on the merits.  In some cases discovery demonstrates that there is no genuine dispute as to any material fact; and discovery focused on narrow jurisdictional issues need not be expensive or time-consuming.  Even if the facts are disputed, resolution of the dispute need not always be expensive and time-consuming.  Here, a modest amount of discovery likely would establish conclusively whether the Kroger Card discounts are decided by Kroger's corporate office or by the district managers.  If in fact the discounts are decided by the Kroger corporate office and the district managers have no authority to vary from those corporate decisions, refusing to look beyond the complaint could result in remand of this action to state court based on false allegations.

Still, Congress wrote the statute, and the courts do not have the privilege of re-writing it. The critical statutory term is "alleged conduct," not "actual conduct." Therefore, in determining whether the district managers are persons "whose alleged conduct forms a significant basis for the claims asserted by the proposed class," the Court will not look beyond the complaint. Based solely on the complaint, the alleged conduct of the district managers forms a significant basis for the claims of the proposed class.

The remaining issue is whether the class seeks "significant relief" from the district managers. For the reasons explained by the Ninth Circuit in *Coleman*, that issue will be decided based on the allegations in the complaint. The complaint alleges that "the [district managers] are independently and jointly and severally liable for all conduct violating Act 183 which they performed or directly or indirectly caused to be performed in the name of Kroger" and that "the [district managers] are personally liable for all sums payable . . . ." Document #2 at 10 ¶¶ 47-48. Assuming that the alleged conduct of the district managers forms a significant basis for the claims of the proposed class, one of the district managers potentially could be liable for greater than fifty percent of the total amount sought by the class. By any commonsense standard, significant relief is sought from at least one of the district managers, which is all that CAFA requires. *Cf. Kaufman v. Allstate Ins. Co.*, No. 07-6160 (MLC), 2010 WL 2674130, at *6 (D.N.J. June 30, 2010) (holding that the proposed class sought significant relief from the local defendant which would have been responsible for 13% of the insurance policies at issue and 44% of all of the claims paid out by the defendants).

Finally, even if the local controversy exception does apply under CAFA, the defendants argue that removal was proper under ordinary principles of diversity jurisdiction because Kroger is a citizen of a different state from the named plaintiffs, the district managers were fraudulently

joined, and the amount in controversy for the claims of each plaintiff exceeds $75,000.  In the Eighth Circuit, "if there is a 'colorable' cause of action – that is, if the state law *might* impose liability on the resident defendant under the facts alleged – then there is no fraudulent joinder." *Filla v. Norfolk So. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2013) (emphasis in the original).  Here, as explained above, based on the facts alleged in the complaint, state law might impose liability on the district managers.  Therefore, the district managers are not fraudulently joined, which means that this Court lacks diversity jurisdiction.

## CONCLUSION

The Court has reluctantly concluded that this case must be remanded.  As a matter of statutory interpretation, determining whether the requirements of section 1332(d)(4)(A)(II)(aa) and (bb) are met may not be based on evidence outside of the complaint.  Based solely on the complaint, "significant relief is sought by members of the proposed class" from the district managers, and the "alleged conduct" of the district managers "forms a significant basis for the claims of the proposed plaintiff class."  The Court's reluctance to reach this conclusion is two-fold.  First, restricting the analysis to the "alleged conduct" in the complaint is fraught with the risk of creating a jurisdictional loophole that will transform the local controversy exception from a narrow exception to a broad one, contrary to the apparent intent of Congress.  *See* SEN. REP. NO. 109-14 at 39 (2005).  Secondly, and most importantly, the requirement of looking at the "alleged conduct" rather than the "actual conduct" may necessitate turning a blind eye to the truth when the truth could be easily ascertained and might even be undisputed after a bit of discovery.  Even so, the statute says what it says, not what a court thinks it ought to say.

The plaintiffs' motion to remand is GRANTED.  Document #9.  This action is remanded to the Circuit Court of Pulaski County, Arkansas.

IT IS SO ORDERED this 24th day of August, 2015.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE